**PEDRO ZACHARIAS h y HNOS**

v.

**RHODE ISLAND INS. CO.**

No. 14579.

United States Court of Appeals
Fifth Circuit.

June 18, 1954.

James J. Morrison, New Orleans, La., for appellant.

Leon Sarpy, New Orleans, La., Chaffe, McCall, Toler & Phillips, and Edmund McIlhenny, New Orleans, La., for appellee.

Before HUTCHESON, Chief Judge, RUSSELL, Circuit Judge, and DAWKINS, District Judge.

RUSSELL, Circuit Judge.

Appellant is the holder of a certificate of insurance issued to New Orleans Machinery Company certifying that the latter is insured under and subject to the conditions of Open Policy No. 3654 of Rhode Island Insurance Company in a stated amount "on seventy six (76) wood crates of textile machinery shipped aboard the S/S William B. Travis b/1 Dec. 30, 1946 at and from New Orleans, Louisiana to San Salvador, el Salvador via Puerto Barrios." The certificate was issued at New Orleans on December 26, 1946, by Southern Marine & Aviation Underwriters, Inc., appellee's agent. It was endorsed in blank to appellant.

The machinery was transported by the steamship from New Orleans to Puerto Barrios where it arrived on January 15, 1947. From there it was carried by rail to San Salvador where it was placed in the Government Custom House on February 25th. Beginning on March 8th and continuing through March 27th, the machinery was removed by truck from the warehouse to appellant's factory. Upon inspection, appellant discovered that it was badly damaged. It was heavily rusted, water was collected in the paper linings and floors of the cases, there was extensive breakage of cast iron parts and many parts were missing.

Appellant made demand upon appellee for payment of the loss under the certificate of insurance. After the demand was refused, appellant instituted this action, claiming that the certificate of insurance afforded "all risks" coverage and insured against the loss sustained, or, alternatively, that all risks coverage was intended and for reasons stated the policy should be reformed so as to cover loss by all risks. A claim that the damage was caused by perils of the sea was expressly abandoned. The trial court held that appellant failed to establish his right to recover under the policy as written and that his evidence was insufficient to establish grounds for reformation of the contract. Judgment was entered accordingly. On this appeal we are asked to reverse the judgment of the trial court and hold that the certificate of insurance, construed alone or together with the open policy, covered any and all losses during transportation or to set aside the finding of the court that appellant failed to sustain his burden of showing that he is entitled to a reformed contract.

As we have stated, the certificate was issued under and subject to the conditions of Open Policy No. 3654. It provided, however, that a bona fide holder for value would not be prejudiced by any terms of the open policy inconsistent with the terms of the certificate. A further provision of the certificate, paraphrased, provided that the insurance attached from the time the machinery left the warehouse at New Orleans and continued during the ordinary course of transit until it was discharged from the vessel at Puerto Barrios and thereafter while the machinery was in transit and/or awaiting transit until delivered to final warehouse at San Salvador or until the expiration of 30 days, whichever should first occur.

Appellant's claim that he is a bona fide holder of the certificate was denied by appellee's general denial and was not specifically ruled on by the trial court. However, since it is not challenged here, we shall consider for purposes of further discussion that he is a bona fide holder of the certificate and is entitled to invoke the bona fide holder provision thereof. His position, candidly stated, is that as to him the certificate is a complete instrument in itself and that it insured him against all insurable losses respecting the machinery while it was en route from the warehouse at New Orleans to the final warehouse at San Salvador. The difficulty with this argument is that standing alone the certificate of insurance does not constitute the whole contract between the parties, but by its terms must be construed together with the open policy. The certificate merely certified that the machinery was insured

under the terms of the open policy and gives appellant the benefit of any inconsistency between the two instruments.

 The open policy provides, among other things, as follows:

"Beginning the adventure upon the said goods and merchandise from and immediately following the loading thereof on Board of the said vessel, at port of shipment aforesaid, unless an earlier time of attachment has been agreed upon in writing hereon and so shall continue and endure until the said goods and merchandise shall be safely landed at the port of destination as aforesaid, and for any further time which may be agreed upon in writing hereon. And it shall and may be lawful for the said vessel, in her voyage, to proceed and sail to, touch and stay at any ports or places, if customary, or if thereunto obliged by stress of weather or other unavoidable accident, without prejudice to this insurance.

"Touching the adventures and perils which these insurers are contented to bear and do take upon themselves in this voyage, they are of the seas, fire, pirates, rovers, assailing thieves, jettisons, criminal barratry of the master and mariners (unless the assured on cargo be owner of or interested in vessel in whole or in part), and all other like perils, losses and misfortunes, that have or shall come to the hurt, detriment, or damage of the said goods and merchandise or any part thereof.

\* \* \* \* \* \*

"No risk while in warehouse or elsewhere on land is covered by this Policy unless expressly agreed in writing hereon. If this policy shall be extended to cover risks of inland transportation and/or risks on land, then in such cases it is understood that such inland transportation is by railroad only (unless agreed in writing hereon), and that this insurance covers only loss or damage arising from fire, collision, derailment and floods (meaning rising navigable waters) while on railroad cars, and by fire or flood, (meaning rising navigable waters) while on dock, wharf, quay or elsewhere on land, unless agreed in writing thereon."

When these provisions are construed with those of the certificate, giving effect to the bona fide holder clause, it is clear that the machinery was insured from the time it was removed from the warehouse at New Orleans until 30 days after it was discharged from the vessel. However, while on land the machinery was insured only against the specific perils enumerated in the open policy, there being no written agreement to the contrary. Therefore, in order for there to be recovery under the policy it must be shown that the loss resulted from one of the enumerated perils during the term of the policy. Our recital of the evidence discloses that this has not been done.

 The open policy in question was issued by appellee to Southern Marine & Aviation Underwriters, Inc., for its convenience in issuing certificates of insurance on risks not covered under specific open policies. Appellant urges that it is merely an agency agreement and is not an insurance policy at all. In any event this hardly aids appellant's cause, since the parties were competent to incorporate its provisions in their contract whether it was an independent policy of insurance or not, and having done so, they are bound by its terms to the extent they are applicable.

It is submitted that the open policy, even if considered as a part of the contract of insurance, is at least ambiguous and should be construed in favor of appellant's claim that it is an all risks policy. Without reciting this argument in detail, it is sufficient to say that most of the so-called ambiguities pointed to by appellant are cured by the specific terms of the certificate wherein the assured, the amount of insurance, the type of merchandise covered and term of the policy are stated in sufficient detail to leave no doubt as to these items. Appellant argues that the "final ambiguity to end all ambiguities" is the clause of the open policy which provides that merchandise shipped under deck is insured "As Agreed." If it be conceded that this

provision is ambiguous as contended, this would not open the proverbial flood gates, (or we might say here, sea cocks), so as to render the contract subject to any construction which appellant chooses to give it. The ambiguity is not inconsistent with the express limitations of coverage contained in the contract and therefore cannot be construed to nullify them. Furthermore, the reference to "under deck", a term not defined by the evidence, obviously relates only to marine carriage and does not purport to govern the coverage of the goods while on land or land conveyances.

We have previously alluded to the fact that under the certificate the insurance expired 30 days after the machinery was discharged from the steamship. The record is silent as to when the machinery was actually landed, although it does show that the ship arrived at Puerto Barrios on January 15, 1947. In this situation it is left entirely to speculation as to when the insurance coverage terminated. Unless the loss occurred during the term of the policy there can be no recovery under any theory. The burden was upon appellant to show that the insurance was in force at the time the loss was sustained. This he has failed to do. Therefore, even if the insurance did cover all risks, appellant has not established his right to recover under it.

Appellant has assigned as error the failure of the trial court to reform the policy as prayed. This point is not insisted upon in appellant's brief; however, it has not been abandoned. The trial court found that the coverage afforded by the certificate of insurance was consistent with the type insurance applied for and that the evidence did not sustain the allegation that appellee was guilty of mistake or fraud in issuing the policy. These findings, unless clearly erroneous, are determinative of the issue since they require a conclusion that there is no factual or legal justification for the grant of the equitable relief of reformation.

The evidence in support of plaintiff's contention is not so much in conflict as it is vague, that is, wanting in probative force. It discloses that appellant testified that he instructed New Orleans Machinery Company, through its Mr. Mogabgab, "to insure this machinery for his account against all risks of transportation and not merely against marine risks and perils of the seas." Mogabgab testified that he called Beeson, a salesman for Montaldo Insurance Agency, in no way connected with appellee or Southern Marine & Aviation Underwriters, Inc., and ordered the insurance, specifying that it should be all risks. He did not recall discussing the matter with any representative of appellee or Southern. When the certificate was later delivered to him, he did not read it but immediately endorsed it in blank to appellant and forwarded it with the other shipping papers. Beeson's testimony, offered by appellee, was almost wholly in generalities. He could remember very little of the transaction, but stated that if Mogabgab ordered the insurance from him, since his agency did not handle marine insurance, he referred the matter to Mr. Montaldo or to Mr. Mead, of Southern. At no time did he testify that Mogabgab ordered all risks insurance or that he had told anyone that all risks was desired. Montaldo did not testify.

Mead testified that independently of the memo hereinafter referred to he remembered very little about the transaction. His testimony related largely to an office memorandum made either at the time the insurance was ordered from him or recapitulated from other memorandums made by him. The memorandum was dated and signed by him. He did not remember talking to Mogabgab but thought that Beeson had ordered the insurance. He talked to Castro, the individual who prepared the shipping papers for Mogabgab, to get specific instructions as to the number of boxes, markings, et cetera. Mead recalled explaining to someone the various coverages for which insurance was available, including the

type issued, all risks and perhaps others, but he felt that the memorandum evidenced the result of the conversation. The insurance was issued in accordance with the memorandum. Mead was no longer connected with Southern or appellee at the time of the trial.

Castro testified that he talked to someone over the telephone and gave them full details concerning the shipment, but he did not tell them the type coverage desired. Generally, when he had conversations concerning such shipments, he would use Mogabgab's telephone and Mogabgab would listen to the conversation over an extension. During the particular conversation he did not recall any reference to the type insurance to be issued.

The primary factual question at issue in the trial was whether appellant's avowed desire to cover the shipment with all risks insurance was ever communicated to appellee or its agents. Since Beeson did not represent appellee, his knowledge, if any, of the type insurance desired, uncommunicated to appellee, was not binding upon it. Thus, the pivotal point in the case could well be probative evidence to the effect that Mead was advised that all risks insurance was desired, either by Beeson or Mogabgab. Beeson's testimony did not furnish this factor. When offered as a witness for appellant in presenting his case-in-chief, Mogabgab could not recall any specific conversation that had transpired between him and a representative of appellee concerning the type of insurance ordered, although he did remember talking to the agent on one occasion when "Mr. Castro was in the office trying to rush these papers through." At that time he may have discussed the coverage; he did not remember exactly.

After appellee had rested, Mogabgab was called as a rebuttal witness and testified definitely that when he had talked to Mead on the occasion just related he told Mead that he wanted all risks insurance. When cross-examined with reference to this testimony, Mogabgab was very equivocal and evasive. Asked why he had not mentioned this conversation before, he stated: "I would have told the court the same thing, if you had asked me properly, if I had asked Mr. Mead with reference to buying or ordering the insurance, and I was cussing him out for not delivering the policy in time." Later he said that "possibly" he had not remembered the conversation the first time he testified.

All told, appellant's prayer for reformation is supported only by the evidence of the plaintiff that he told Mogabgab to secure coverage "against all risks of transportation and not merely against marine risks and perils of the seas," Mogabgab's testimony that he ordered all risks from Beeson and the rebuttal testimony to which we have alluded. The trial court did not rule specifically upon Mogabgab's credibility as a witness, but its finding that there is no evidence in the record to show mistake or fraud on appellee's part evidences a rejection of his rebuttal testimony. Under the facts which we have recited it was within its province to do so. In cases such as this, due regard must be given to the opportunity of the trial judge to determine the credibility of witnesses who appear and testify before him, particularly where, as here, the omissions, inconsistencies and equivocations in the witness' testimony are sufficient to raise grave doubts as to his veracity.

Absent Mogabgab's rebuttal testimony, there is nothing in the record to show mutual mistake, fraud, fraud and mistake or any other permissible ground for reformation. At most, the record shows only that appellant intended that all risks insurance be secured to cover the shipment of machinery and due to oversight, or unilateral mistake, on the part of his representatives, this intention was never communicated to appellee. In this situation, appellant has no cause to complain against appellee. The trial court's finding of such non-communication has sufficient evidential support and cannot be said to be clearly erroneous.

Judgment affirmed.