Matter of S——

## In EXCLUSION Proceedings

### A-11537371

*Decided by Board December 23, 1958*

Citizenship—Acquisition by child born abroad—Section 301(a)(7), (b) and (c), Immigration and Nationality Act—Failure to retain under section 201 (g) and (h), Nationality Act of 1940—Savings clause, section 405, Immigration and Nationality Act—Expatriation, conclusive presumption, section 349(b), 1952 act.

(1) A person who acquired United States citizenship in 1935 at time of birth abroad (to a U.S. citizen parent and an alien parent) under section 1993 of the Revised Statutes, as amended, and who failed to take up residence in the United States prior to his sixteenth birthday as required by section 201(g) and (h) of the Nationality Act of 1940, retains his United States citizenship when he complies with the provisions of section 301(b) of the Immigration and Nationality Act by coming to the United States prior to his twenty-third birthday and establishing physical presence in the United States for a continuous period of five years. (*Matter of B——*, 5 I. & N. Dec. 291 (1953), overruled.)

(2) Information furnished such person in 1951 by an American consul that he had lost his United States citizenship under section 201 (g) and (h) of the Nationality Act of 1940 by failing to take up residence in the United States prior to his sixteenth birthday was accurate when given but later became inapplicable by reason of the enactment of section 301(a)(7), (b), and (c) of the Immigration and Nationality Act. When such person, in the belief that he had already lost his United States citizenship, voted in an Italian political election in 1956, his act of voting will not be considered expatriative provided he applies for a United States passport prior to his twenty-third birthday.

(3) Where such person makes timely application for a United States passport which, because of delay by the Government, is not issued until after his twenty-third birthday, and he proceeds to the United States immediately after its issuance, he is entitled to admission as a United States citizen since his failure to arrive in the United States prior to his twenty-third birthday was due to circumstances beyond his control.

(4) An act designated expatriative by statute will not operate to expatriate a United States citizen who was unaware that he had United States citizenship or of the consequences of the expatriative act, provided (a) he had been misled by a change in interpretation in the law; or (b) he had been misled by the action of a Government official whose duty it was to inform him; or (c) he performed the expatriative act after receiving information

226

(which later became inapplicable, though accurate when given) from a Government official that he had already lost United States citizenship.

(5) The provision in section 349 (b) of the Immigration and Nationality Act that certain acts shall be "conclusively presumed" to have been performed voluntarily is not applicable to cases where the United States citizen relied on the advice of a United States consul that he had already lost his United States citizenship and where he would not have jeopardized his citizenship by voting had he not been so informed.

Excludable: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant, no visa.

## BEFORE THE BOARD

**Discussion:** The applicant is a 23-year-old single male who was born in Italy on March 10, 1935. He arrived in the United States on June 30, 1958, and applied for admission as a United States citizen. He was in possession of a United States passport issued to him by the American Consul at Naples, Italy, on June 19, 1958. The special inquiry officer ordered that applicant be admitted to the United States as a citizen of the United States, and certified the decision to this Board as a case of novel impression.

The applicant was never in the United States prior to his application for entry on June 19, 1958. His father and mother were both born in Italy, and his father became a naturalized citizen of the United States on October 5, 1929. His mother has never been a citizen of the United States. Applicant acquired citizenship of the United States at birth under section 1993 of the Revised Statutes of the United States, as amended by the Act of May 24, 1934. Under section 201(g)[1] of the Nationality Act of 1940 it was necessary for applicant to arrive in the United States before he became 16 years of age in order to retain his United States citizenship. By enactment of section 301(a) through (c) of the Immigration and

---

[1] Sec. 201. The following shall be nationals and citizens of the United States at birth: * * * (g) A person born outside the United States and its outlying possessions of parents one of whom is a citizen of the United States who, prior to the birth of such person, has had ten years' residence in the United States or one of its outlying possessions, at least five of which were after attaining the age of sixteen years, the other being an alien: *Provided*, That in order to retain such citizenship, the child must reside in the United States or its outlying possessions for a period or periods totaling five years between the ages of thirteen and twenty-one years: *Provided further*, That, if the child has not taken up a residence in the United States or its outlying possessions by the time he reaches the age of sixteen years, or if he resides abroad for such a time that it becomes impossible for him to complete the five years' residence in the United States or its outlying possessions before reaching the age of twenty-one years, his American citizenship shall thereupon cease.

23 at time of documentation, who acquired United States citizenship at birth, and who applied for a passport before reaching 23, whose application was disapproved because he had failed to take up residence in the United States before reaching 16, may now be given a United States passport (under conditions enumerated, which are not relevant here because they have been complied with). The memoranda stipulated that the applicant must have been "wrongfully refused documentation" or "misinformed" that he had lost United States citizenship under section 201(g) of the 1940 act for failure to come to the United States before age 16. He must have been prevented from complying with section 301(b) of the Immigration and Nationality Act by the erroneous previous interpretation of section 301(b) by the State Department.

The instant case differs from similar matters that have reached us, in that this applicant performed an expatriative act in the interval during which he believed he had lost his claim to United States citizenship at his 16th birthday. He voted in municipal elections on May 27, 1956. The memoranda from the Department of State, referred to above, specifically instructed consular and diplomatic personnel that "all cases of the foregoing nature involving otherwise expatriative acts must be submitted for the Department's consideration." The memoranda then set forth three hypothetical cases to illustrate the position that performance of an otherwise expatriative act would not necessarily preclude an applicant from obtaining the benefits of section 301(b) of the Immigration and Nationality Act. The hypothetical situations set forth in State Department memorandum of October 14, 1958 (and we have abbreviated to some extent) are as follows:

A. A—— was born a United States citizen on February 28, 1935. He applied for a United States passport for the first time on June 1, 1952, at age 17. He was denied a passport because of the provisions of section 201(g) of the 1940 act, and he was correctly informed that he had lost his United States citizenship. He voted in a foreign election in 1956. In January 1958 when he was not yet 23 years of age he learned of section 301(b) of the 1952 act. He applied for a passport immediately. Even though he voted, believing himself an alien, and even though he was *correctly informed* by a consular official of his status on June 1, 1952, he would be documented. Because *he was not yet 23* when he applied in January 1958, it will be considered his act of voting was not expatriative.

B. B—— was born a United States citizen on May 31, 1934. He applied for a passport for the first time on June 1, 1952 (age 18). His application was denied because of section 201(g) of the 1940 act, and he was correctly informed that he had lost his United States citizenship. He voted in a foreign election in 1956 at the

age of 22, believing himself to be an alien. He first learned of the new interpretation of section 301(b) in January 1958 *at the age of 23 years* and applied for a passport immediately. (The facts in B—— are the same as the facts relating to A—— above, except that B—— *was over age 23* at the time of his application for a passport.) In this case, says the State Department, his failure to comply with the retention provisions of section 301(b) of the 1952 act cannot "in equity be attributed to the United States Government." Hence, they hold B—— lost his citizenship on his 23rd birthday. (He did not lose his United States citizenship by the act of voting in the foreign election, but simply by the passage of time.)

C. C—— was born a United States citizen on June 1, 1934. He applied for a passport the first time on July 1, 1952 (at the age of 18). His application was denied because of the provisions of section 201(g) of the 1940 act. He was "*not fully informed*," because he was not told that the new law passed June 27, 1952 (effective December 24, 1952) would restore his citizenship on December 24, 1952. (He could not be so informed, because of the departmental view at that time that section 301(b) of the 1952 act would not restore citizenship to those who had lost it.) He voted in a foreign election in 1956. He learned of section 301(b) in January 1958, at the age of 23-and-a-half years, and reapplied for a passport immediately. The memorandum declares that State would not view his act of voting as an expatriative act, but would consider it due to the mistake of the United States Government. He was in the same position as the person who was misinformed after December 24, 1952. His failure to arrive in the United States before age 23 was also the fault of this Government, and hence he will be given a passport, even though he was over age 23 when he applied for a passport in January 1958.

Applicant falls within group A above, and his documentation for travel to the United States was consistent with the directive of October 14, 1958.

Whether or not the instructions in the memoranda of the Department of State discussed above and the distinctions made there are sound in all categories, as to this case the directive seems reasonable enough, and we will not now take a more restrictive view. However, we have previously taken the view that when the expatriative act occurred, the consequence of expatriation flowed from the act, even though the claimant did not intend the consequence. That is, if he voted intentionally in a foreign election, either not knowing he was a United States citizen, or not knowing that such voting had expatriative consequences, he nonetheless was expatriated. This has been the view taken by most courts who have had

any of several phases of these problems before them. The thesis has developed as follows: Congress has power to enact legislation depriving individuals of their United States citizenship as a consequence of conduct engaged in voluntarily (*Mackenzie* v. *Hare*, 239 U.S. 299; *Savorgnan* v. *United States*, 338 U.S. 491). Citizenship may be renounced voluntarily through exercise of the right of expatriation *and also* by other acts "in derogation of individual allegiance to this country" (*Savorgnan* and *Mackenzie*, *supra*, also *Bauer* v. *Clark*, 161 F.2d 397, cert. den. 332 U.S. 839). *No* conduct results in expatriation unless the conduct is engaged in voluntarily (*Mandoli* v. *Acheson*, 344 U.S. 133; *Acheson* v. *Murata*, 342 U.S. 900). The burden is on the Government to prove the *performance* of the expatriating act by clear, convincing and unequivocal evidence (*Schneiderman* v. *United States*, 320 U.S. 118; *Baumgartner* v. *United States*, 322 U.S. 665; *Gonzales* v. *Landon*, 350 U.S. 920). The burden is on the Government to prove also by clear, convincing and unequivocal evidence that the expatriating act (the act showing renunciation of citizenship) was *voluntarily* performed (*Nishikawa* v. *Dulles*, 356 U.S. 129). We come now to an issue which concerns us in the instant case, and which was settled by *Perez* v. *Brownell*, 356 U.S. 44, whether a person, in order to expatriate himself by the performance of the voluntary act, must *know* that the act has an expatriating effect. In *Perez* the Court said:

\* \* \* But it would be a mockery of this Court's decisions to suggest that a person, in order to lose his citizenship, must intend or desire to do so. The Court only a few years ago said of the person held to have lost her citizenship in *Mackenzie* v. *Hare*, supra: "The woman had not intended to give up her American citizenship." *Savorgnan* v. *United States*, 338 U.S. 491, 501 \* \* \* Those two cases mean nothing—indeed, they are deceptive—if their essential significance is not rejection of the notion that the power of Congress to terminate citizenship depends upon the citizen's assent. \* \* \*

There are many lower court decisions [6] but we quote only one, *Acheson* v. *Wohlmuth*, 196 F.2d 866 (C.A.D.C., 1952), cert. den. 344 U.S. 833, which states concisely:

\* \* \* A person cannot avoid the consequences which Congress has attached to his overt acts by claiming ignorance of the law or a contrary intention on his own part in performing those acts, even though loss of citizenship is the result. \* \* \*

The general rule should continue to be that so long as the act was unequivocal, proved beyond a reasonable doubt, not under duress, *etc.*, the result was expatriation. *The holding of the present case*, that the foreign voting (or any other act designated ex-

---

[6] A minority view is expressed by the Circuit Court of Appeals for the Third Circuit in *Perri* v. *Dulles*, 206 F.2d 586, and *Petition of Acchione*, 213 F.2d 845, wherein it is declared, in effect, that a citizen cannot be deprived of his citizenship without his knowledge and concurrence.

patriative by the statute) will not operate to expatriate where the claimant was unaware of the consequences, or was unaware that he had United States citizenship, should be limited to the following situations: (1) where the claimant was misled by a change of interpretation in the law, or (2) where he was misled by the action of the Government officer whose duty it was to inform him, or (3) where the claimant performed the expatriative act believing, because of information given him by a Government official (information which, though accurate when given him, later became inapplicable), that he had already lost his United States citizenship. If the claimant committed the expatriative act under these circumstances, he will not be found to have forfeited his citizenship.

The Service representative calls our attention to section 349(b)[7] of the Immigration and Nationality Act, which provides a conclusive presumption that any expatriative act specified in section 349(a) was done voluntarily and without duress, if the claimant to citizenship was a national of the state wherein the act was performed, who had been physically present in that state for ten years or more. Certainly the terms of the conclusive presumption apply to the facts in the instant case. The claimant here makes no suggestion that his voting in the foreign election was involuntary or under duress. However, the circumstances under which the presumption was intended to operate do not exist here where we must find that the claimant relied on the advice of a United States official, and that he would not have jeopardized his citizenship had he not been informed that it was already lost to him.

The special inquiry officer concluded that applicant's departure from Italy was dependent upon the issuance to him of a United States passport, that he could not lawfully enter the United States until he was documented, that there was no delay in his applying for a passport as soon as he became aware that he might still have a claim to United States citizenship. Therefore, his failure to arrive in the United States prior to his becoming age 23 was due to circumstances beyond his control, and he did enter the United States to take up permanent residence here as soon as he lawfully could do so. The order of the special inquiry officer that the applicant be admitted to the United States as a citizen of the United States was the correct one.

**Order:** It is ordered that the order of the special inquiry officer of August 20, 1958 be and is hereby approved.

---

[7] SEC. 349(b) Any person who commits or performs any act specified in subsection (a) shall be conclusively presumed to have done so voluntarily and without having been subjected to duress of any kind, if such person at the time of the act was a national of the state in which the act was performed and had been physically present in such state for a period or periods totaling ten years or more immediately prior to such act.