**C. M. K., a young lady, Plaintiff,**

**v.**

**Elliot RICHARDSON, Attorney General of the United States, Defendant.**

**Civ. A. No. 4–70478.**

United States District Court,
E. D. Michigan, S. D.

Feb. 22, 1974.

Harry Kobel, of Rosin & Kobel, Detroit, Mich., for plaintiff.

Saul A. Green, Asst. U. S. Atty., Detroit, Mich., for defendant.

### MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

The plaintiff filed this action pursuant to 8 U.S.C. § 1503 and 28 U.S.C. §

2201, seeking a judgment declaring the plaintiff to be a citizen and national of the United States. The issues have been well briefed and well argued by both plaintiff's counsel and the Assistant United States Attorney.

Both sides agree that the entire record is before the court, and that the issues turn on matters of law, the facts not being disputed. The attorneys agreed in open court that this matter is ripe for final disposition, and the entire matter, with both counsel stipulating thereto, was submitted to the court for resolution.

The plaintiff claims citizenship from birth, which occurred in Whitsable, England, on February 19, 1945. This claim to citizenship is through her putative father, Mr. P.J.P. Mr. P.J.P. is a native born United States citizen; he was born October 24, 1921, in Tyngsborough, Massachusetts. He resided continuously in the United States until November 3, 1939, when he entered the United States Army. While serving in England, Mr. P.J.P. met Miss P.B., a native and citizen of England. The plaintiff, Miss C. M.K., was born as a result of their relationship. Before her birth, Mr. P.J.P. was transferred to Germany, and, upon discharge, returned directly to the United States, never having seen his daughter.

Mr. P.J.P. testified that while he was in Germany he learned of Miss P.B.'s delicate condition. Unfortunately, he lost that letter, her address, and all his other personal possessions during a time of great stress, specifically, The Battle of the Bulge. He was thus engaged in the remnants of that Battle at the time of the plaintiff's birth. Thereafter, he made unsuccessful efforts to find both mother and daughter.

Mr. P.J.P. and the plaintiff's mother were never married to each other, but each married other persons after plaintiff's birth. In 1968 the plaintiff learned the name of her natural father. He arranged for the plaintiff to come to the United States on January 19, 1970. He subsequently executed an acknowledgement of paternity in Genesee County, Michigan, recognizing the plaintiff as his natural child. It is undisputed that Mr. P.J.P. legitimated his daughter, the plaintiff, long after her twenty-first birthday.

In February, 1970, the plaintiff filed an application for a certificate of citizenship pursuant to the provisions of 8 U.S.C. § 1452, but the application was denied on the grounds that the plaintiff had not been legitimated prior to her twenty-first birthday, as required by the Immigration and Nationality Act (1940), Section 205, 8 U.S.C. § 605, or the later Immigration and Nationality Act (1952), Section 309, 8 U.S.C. § 1409.

In September, 1971, the plaintiff instituted a suit in this court for declaratory judgment, but a month later, on motion of the defendant, the suit was dismissed. The basis for that motion is not part of the record in this action, but it is probable that the basis for the motion was plaintiff's failure to exhaust her administrative remedies.

In September, 1972, a motion for reconsideration was filed with the Immigration and Naturalization Service in Detroit. This motion was denied and the Service's earlier decision reaffirmed. An appeal was taken to the Regional Commissioner, who affirmed the decisions of the District Director. At that point the plaintiff had exhausted her administrative remedies, and she again filed suit in federal court.

The issues presented to the court are relatively narrow: which of two Immigration and Nationality Acts, the first being the Act of 1940 and the second being the Act of 1952, is applicable to the factual circumstances presented by this case. The plaintiff contends that the 1940 Act is applicable, and by the provisions contained therein she is a citizen and national of the United States. The government, on the other hand, contends that the 1952 Act is applicable and by the provisions contained

in that Act the plaintiff is not a citizen or national of the United States.

The government originally contended, in its briefs, that even if the 1940 Act were found to be applicable the plaintiff would not be a citizen because of her purported failure to meet the provisions contained in that Act. The government has now abandoned that position. The Assistant United States Attorney began his oral presentation by conceding Miss C.M.K. would indeed be a citizen and national of the United States if the 1940 Act were found to be applicable. He was, as will be discussed, quite correct in that concession.

The 1952 Act contained a savings clause, Section 405, 8 U.S.C. § 1101 (note), that reads as follows:

"(a) Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes [1], conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided there·in, hereby continued in force and effect."

The savings clause was construed by the Supreme Court in United States v. Menasche, 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615 (1955), and given a broad interpretation:

" . . . (this) section was designed to extend a savings clause already broadly drawn [in the 1940 Act] and embodies, we believe, congressional acceptance of the principle that the statutory *status quo* was to continue even as to rights not fully matured. It should be noted, further, that the conflict between [various cases] involved a situation where the alien had failed to take *any* affirmative action to assert his claim to citizenship. Even the more restrictive opinion recognized that affirmative action by the alien might alter the result there reached. If Congress was willing to preserve a "mere condition, unattended by any affirmative action," we think its savings clause also reaches instances, such as this, where affirmative action is present. The whole development of this general savings clause, its predecessors accompanying each of the recent codifications in the field of immigration and naturalization, manifests a well-established congressional policy not to strip aliens of advantages gained under prior laws. The consistent broadening of the savings provision, particularly in its general terminology, indicates that this policy of preservation was intended to apply to matters both within and without the specific contemplation of Congress." Citations omitted. Emphasis in opinion.

Although the *Menasche* opinion can be distinguished on its facts from the instant case, it makes clear that there is a congressional intent to preserve any rights inuring under the 1940 Act, even though the right be a mere condition, unattended by any affirmative action. Certainly the language of the savings clause is broad enough to support that conclusion, and negate conclusions to the contrary.

If the plaintiff can claim citizenship under the 1940 Act then the 1940 Act is applicable to her circumstances, rather

---

[1]. The word "statutes" should be read as "statuses", Lehmann v. United States ex rel. Carson, 353 U.S. 685, 77 S.Ct. 1022, 1 L. Ed.2d 1122 (1957).

than the 1952 Act, by virtue of the savings clause contained in the 1952 Act and the opinion of the Supreme Court in *Menasche, supra.*

The plaintiff claims citizenship under Section 201(i), 8 U.S.C. § 601(i), of the 1940 Act. That subsection provides as follows:

"A person born outside the United States and its outlying possessions of parents one of whom is a citizen of the United States who has served or shall serve honorably in the armed forces of the United States after December 7, 1941, and before the date of the termination of hostilities in the present war as proclaimed by the President or determined by a joint resolution by the Congress and who, prior to the birth of such person, has had 10 years' residence in the United States or one of its outlying possessions, at least five of which were after attaining the age of 12 years, the other being an alien: *Provided*, That in order to retain such citizenship, the child must reside in the United States or its outlying possessions for a period or periods totaling 5 years between the ages of thirteen and twenty-one years: *Provided Further*, that, if the child has not taken up a residence in the United States or its outlying possessions by the time he reaches the age of 16 years, or if he resides abroad for such a time that it becomes impossible for him to complete the 5 years' residence in the United States or its outlying possessions before reaching the age of twenty-one years, his American citizenship shall thereupon cease."

█ The evidence is without dispute that the plaintiff meets all the requirements of 8 U.S.C. § 601(i) with the exception of the provisos. The question next becomes whether or not the plaintiff can meet the requirements of the provisos. The provisos appear to be inconsistent with the 1952 Act, especially as amended, and are thus not applicable because they are not saved by the savings provision of the 1952 Act. Congress

specifically intended that portions of the 1940 Act which were in conflict with portions of the 1952 Act be null and void.

Rights and benefits accruing under the 1940 Act are preserved by the savings clause, Section 405, 8 U.S.C. § 1101 (note). There is no mention of preservation of burdens. Further, Section 403(b) of the 1952 Act provided:

"Except as otherwise provided in section 405, all other laws, or parts of laws, in conflict or inconsistent with this Act are, to the extent of such conflict or inconsistency, repealed."

Section 301(b), 8 U.S.C. § 1401(b), appears to be the successor to the proviso portions of Section 201(i), 8 U.S.C. § 601(i). Even the most superficial examination of Section 201(i), 8 U.S.C. § 601(i) [part of the 1940 Act, as amended in 1946] and Section 301(b), 8 U.S.C. § 1401(b), indicates they are in conflict and inconsistent with one another:

"Any person who is a national and citizen of the United States at birth under paragraph (7) of subsection (a) of this section, shall lose his nationality and citizenship unless he shall come to the United States prior to attaining the age of twenty-three years and shall immediately following any such coming be continuously physically present in the United State(s) for at least five years . . ." 8 U.S.C. § 1401(b).

Because the provisos of Section 201(i), 8 U.S.C. § 601(i), are in conflict and inconsistent with the 1952 Act, they are specifically repealed, Section 403(b). That is the congressional mandate.

The next issue is whether a person who claims citizenship under Section 201(i), 8 U.S.C. § 601(i), of the 1940 Act must meet the provisions of what might be called the "substitute provisos" to Section 201(i), 8 U.S.C. § 601(i), as found in Section 301(b), 8 U.S.C. § 1401(b), of the 1952 Act. Neither counsel, nor diligent research by the court itself, has yielded any case law declaring Section 301(b), 8 U.S.C. § 1401(b), to

be applicable to rights accruing under Section 201(i), 8 U.S.C. § 601(i). In fact, there appear to be no cases on this issue at all, regardless of the holding. The plaintiff meets the terms and conditions imposed by Section 301(b), 8 U.S.C. § 1401(b), as amended in 1972.

"Any person who is a national and citizen of the United States under paragraph (7) of subsection (a) of this section shall lose his nationality and citizenship unless—(1) he shall come to the United States and be continuously physically present therein for a period of not less than two years between the ages of fourteen years and twenty-eight years . . ."

The record clearly shows that Miss C. M.K. has resided in the United States for two years between the ages of fourteen and twenty-eight years of age. She satisfies what has been here called the "substitute provisos".

A final issue is raised by a mistake of the Immigration and Naturalization Service in this case. The Service ruled against the plaintiff because she was not legitimated prior to her twenty-first birthday, as required by Section 205 of the 1940 Act, 8 U.S.C. § 605. That section, a part of the 1940 Act, provides as follows:

"The provisions of section 201, subsections (c), (d), (e), and (g), and section 204, subsections (a) and (b), hereof apply, as of the date of birth, to a child born out of wedlock, provided the paternity is established during minority, by legitimation, or adjudication of a competent court."

That section is by its terms quite inapplicable to Section 201(i), 8 U.S.C. § 601(i). This conclusion is supported by one of the Service's own decisions, In the Matter of G, 3 Immigration and Naturalization Decisions 794, 796 (1949):

"It is noted that section 201(i) (*supra*) [8 U.S.C. 601(i)] is not mentioned in section 205 [8 U.S.C. 605]. It is true that section 201(i) was added to the Nationality Act on July 31, 1946, long after the passing of the act as a whole. Therefore, it could be presumed that section 201(i) would have been included in section 205 had it been in existence at the time the balance of the act was passed. However, such presumptions are not to be indulged in the administration of a law. The language of section 205 is clear and unambiguous. Its benefits may be granted only to persons who are specifically included therein."

This court agrees[2] with the judgment of the Immigration and Naturalization Service in its 1949 interpretation of the law. Section 205, 8 U.S.C. § 605, requiring legitimation before the age of twenty-one is by its terms not applicable to Section 201(i), 8 U.S.C. § 601(i), the provision under which plaintiff claims citizenship.

In summary: The plaintiff, Miss C.M.K., derives her citizenship by virtue of the provisions contained in Section 201(i), 8 U.S.C. § 601(i), of the 1940 Immigration and Naturalization Act. The 1940 Act applies because of the savings clause, Section 405, 8 U.S.C. § 1101 (note), in the 1952 Immigration and Naturalization Act, as interpreted by the United States Supreme Court in United States v. Menasche, 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615 (1955). Section 201(i), 8 U.S.C. § 601(i), is not effected by Section 205, 8 U.S.C. § 605, because that section plainly states which portions of Section 201, 8 U.S.C. § 601, it applies to, and subsection (i) is not so enumerated therein. In the Matter of G, 3 Immigration and Naturalization Decisions 794 (1949). Miss C.M.K. is not required to meet the terms of the provisos in Section 201(i), 8 U.S.C. § 601(i), because they are in conflict and inconsistent with the terms of Section 301(b), 8 U.S.C. § 1401(b), and are thus repealed in accord with the mandate

2. This court does not concur with other holdings in the G case.

found in Section 403(b) of the 1952 Immigration and Naturalization Act.

The Immigration and Naturalization Service is directed to issue Miss C.M.K., their file A18 949 381, a certificate of citizenship.

So ordered.