**Y.T., an individual, Plaintiff,**

v.

**Griffin BELL, Attorney General of the United States, Defendant.**

Civ. A. No. 79–187.

United States District Court,
W. D. Pennsylvania.

Oct. 25, 1979.

Theodore A. McConnell, Peter H. Beaman, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for plaintiff.

Joel Strauss, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION

COHILL, District Judge.

### History of the Case

Y.T.'s [1] story is the stuff of which modern drama is made. Her parents were a Japanese citizen and an American serviceman who met in Yokosuka, Japan, in 1946. Although they did not marry, they cohabited for a time and had one daughter, Y.T., who was born on October 19, 1947. When his daughter was barely a year old, the father was recalled to the United States. Y.T. remained with her mother in Japan until 1963; then, at age 15, she came to the United States under a student visa. In 1975, she located her father and the two were reunited for the first time in over 25 years. Her father acknowledged paternity by filing an affidavit in a state court.

Y.T. filed an application for a certificate of citizenship pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1452 ("the Act"), specifically claiming entitlement to citizenship under § 201(i) of the Act, 8 U.S.C. § 601(i). Her application was denied on or about May 3, 1978 by the Immigration and Naturalization Service and denied again on December 22, 1978 on appeal to the Regional Commissioner. She then filed a complaint in this Court for declaratory and injunctive relief. This Court has jurisdiction pursuant to § 360(a) of the Act, 8 U.S.C. § 1503(a). Since no facts are in dispute, both parties have filed motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### Construction of the Nationality Act

The legal dispute involves statutory construction of several sections of the Act and an interpretation of their relationship to one another. Sections 201 and 205 of the Act, enacted in 1940 (and preserved by the subsequent 1952 Act), provide in relevant part:

## CHAPTER II—NATIONALITY AT BIRTH

Sec. 201. The following shall be nationals and citizens of the United States at birth:

.     .     .     .     .

(g) A person born outside the United States and its outlying possessions of parents one of whom is a citizen of the United States who, prior to the birth of such person, has had ten years' residence in the United States or one of its outlying possessions, at least five of which were after attaining the age of sixteen years, the other being an alien: Provided, That, in order to retain such citizenship, the child must reside in the United States or its outlying possessions for a period or periods totaling five years between the ages of thirteen and twenty-one years: Provided further, That, if the child has not taken up a residence in the United

1. For the sake of confidentiality, the plaintiff in this case will be referred to by her initials.

States or its outlying possessions by the time he reaches the age of sixteen years, or if he resides abroad for such a time that it becomes impossible for him to complete the five years' residence in the United States or its outlying possessions before reaching the age of twenty-one years, his American citizenship shall thereupon cease.

The preceding provisos shall not apply to a child born abroad whose American parent is at the time of the child's birth residing abroad solely or principally in the employment of the Government of the United States or a bona fide American, educational, scientific, philanthropic, religious, commercial, or financial organization, having its principal office or place of business in the United States, or an international agency of an official character in which the United States participates, for which he receives a substantial compensation;

.        .        .        .        .

Sec. 205.   The provisions of section 201 subsections (c), (d), (e), and (g),  .  .  . hereof apply, as of the date of birth, to a child born out of wedlock, provided the paternity is established during minority, by legitimation, or adjudication of a competent court.

In the absence of such legitimation or adjudication, the child, whether born before or after the effective date of this Act, if the mother had the nationality of the United States at the time of the child's birth, and had previously resided in the United States or one of its outlying possessions, shall be held to have acquired at birth her nationality status.

Thus, section 201 of the Act defined various categories of citizens; section 205 required that illegitimate children in certain of these categories must in addition to any 201 requirements *also* be legitimated during minority. 8 U.S.C. § 605 (1940).

In 1946, obviously due to the presence of the United States armed forces in many locations abroad, the Congress passed an amendment to the 1940 Act. The entire text of the amendment follows:

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That section 201 of the Nationality Act of 1940 (54 Stat. 1138–1139; 8 U.S.C. 601) is hereby amended by adding the following subsection to be known as subsection (i):

"(i) A person born outside the United States and its outlying possessions of parents one of whom is a citizen of the United States who has served or shall serve honorably in the armed forces of the United States after December 7, 1941, and before the date of the termination of hostilities in the present war as proclaimed by the President or determined by a joint resolution by the Congress and who prior to the birth of such person, has had ten years' residence in the United States or one of its outlying possessions, at least five of which were after attaining the age of twelve years, the other being an alien: Provided, That in order to retain such citizenship, the child must reside in the United States or its outlying possessions for a period or periods totaling five years between the ages of thirteen and twenty-one years: Provided further, That, if the child has not taken up a residence in the United States or its outlying possessions by the time he reaches the age of sixteen years, or if he resides abroad for such a time that it becomes impossible for him to complete the five years' residence in the United States or its outlying possessions before reaching the age of twenty-one years, his American citizenship shall thereupon cease."

Section 201(i) repeats the requirements of 201(g) with one exception: the five-year residency requirement to be met by the citizen parent after age 16 in 201(g) is changed in 201(i) to a five-year period after the age of twelve. Section 201(i) also differs from 201(g) in that it is not expressly included in § 205, nor followed by its own proviso similar to § 205.

In the interstice between these provisions, Y.T. has been caught in her struggle to obtain full American citizenship. The Immigration and Naturalization Service de-

nied her application, construing § 201(i) as insufficient, standing alone, to confer citizenship upon an illegitimate child within that section who had not also met the legitimacy requirements of § 205. That agency found, and the Government argues here, that § 205 is applicable to § 201(i) even though § 205 on its face refers to only subsections (c), (d), (e), and (g). The omission of subsection (i) from § 205 is logically explained by the Government to be due to the fact that subsection (i) was enacted six years later than § 205. This we can accept. However, the Government's contention that Congress' intent to include subsection (i) under § 205 can be logically presumed from its silence on the matter requires us to assume too much. The construction suggested by the Government is not inherently unreasonable; it might be expected that Congress would want to treat various categories of applicants for citizenship in the same, or a similar, fashion.

■■■ However, there are several compelling reasons for rejecting the construction that § 205 implicitly applies to a later-enacted revision to § 201. First, § 205 does not apply to all the subsections under § 201; it expressly applies to only subsections (c), (d), (e), and (g). If it were a blanket provision referring to all the categories of citizens, we might comfortably accept that Congress intended by its silence to include the later-enacted § 201(i). Presuming a Congressional omission or mistake in the scheme before us, where Congress has carefully classified and cross-referenced numerous groups, is another matter. It is axiomatic that legislation is to be construed, where possible, to avoid mistakes or inconsistencies. Second, had an omission occurred, Congress has now had thirty-three years to correct it. The 1940 Act was extensively revised in 1952 with §§ 201(g) and (i) of the earlier act preserved by reference. See §§ 301, 309, 341 and 405 of the 1952 Immigration and Nationality Act, 8 U.S.C. §§ 1401, 1409 and 1452.[2] Third, § 201(i) was obviously intended to extend the bene-

fits of citizenship to children born of American servicemen abroad. It is facially complete, referring only to § 201, and not to § 205, of the 1940 Act. It contains two express provisos which are carefully detailed. Where a statute is clear and unambiguous on its face, courts must always adopt a construction consistent with the plain meaning of the statute.

The limited reported case law bolsters plaintiff's position. One district court which has considered the question before us has held that § 201(i) does not implicitly include the legitimacy requirement of § 205. In *C.M.K. v. Richardson*, 371 F.Supp. 183 (E.D.Mich.1974), Judge Joiner wrote simply, "Section 205, 8 U.S.C. § 605, requiring legitimation before the age of twenty-one is by its terms not applicable to Section 201(i), 8 U.S.C. § 601(i)." In its own early decision interpreting the relationship between §§ 201(i) and 205 the Immigration and Naturalization Service explained:

"It is noted that section 201(i) (supra) is not mentioned in section 205. It is true that section 201(i) was added to the Nationality Act on July 31, 1946, long after the passing of the act as a whole. Therefore, it could be presumed that section 201(i) would have been included in section 205 had it been in existence at the time the balance of the act was passed. However, such presumptions are not to be indulged in the administration of a law. The language of section 205 is clear and unambiguous. Its benefits may be granted only to persons who are specifically included therein."

*In the Matter of G*, 3 I. & N. Dec. 794, 796 (1949).

The Government argues that the Immigration and Naturalization Service repudiated its position in the *Matter of G* case in Opinion of the General Counsel No. 76, July 22, 1952. However, the *C.M.K* case, *supra*, remains viable precedent for the federal district courts. Sections 201(i) and 205 remain clear and unambiguous.

---

2. The Government has not argued in this case that the 1952 Act rather than the 1940 Act should apply. See *C.M.K. v. Richardson*, 371 F.Supp. 183 (E.D.Mich.1974).

■ For all these reasons, we construe § 201(i) as sufficient Congressional authority to confer citizenship upon a person (1) one of whose parents was a United States citizen serving in the Armed Services who had himself resided in the United States more than ten years and (2) who came to the United States at or before age 16 and resided here for five years. We read the § 201(i) proviso requiring the person to reside in the United States for five years before reaching majority as the only condition subsequent to attaining—or *retaining*—American citizenship where the pre-condition of parentage has been met. The parties are in agreement that Y.T. meets the explicit requirements of § 201(i). She is therefore entitled to a judgment declaring her to be a United States citizen.

## Equal Protection

In her complaint, Y.T. asserted that the actions of the Immigration and Naturalization Service in denying her application for a certificate of citizenship denied her the equal protection of the laws of the United States. At oral argument we pursued the issue of whether a condition subsequent of legitimation would be unconstitutional. Although this case has been decided on the issue of statutory construction, we do not believe that the precedent cited precludes an equal protection challenge to the Government's proposed interpretation of §§ 201(i) and 205.

■ The Government correctly asserts that Congress' power over the admission of aliens is extremely broad and subject to limited judicial review. *Fiallo v. Bell*, 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977); *Oceanic Navigation Co v. Stranahan*, 214 U.S 320, 329, 29 S.Ct. 671, 53 L.Ed. 1013 (1909). In *Fiallo*, the Supreme Court upheld a section of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1101(b), which gave preference to illegitimate foreign-born children of American mothers over illegitimate foreign-born children of American fathers when such children sought special immigration preference. There the Court deferred to Congress' judgment in classifying aliens, noting that legislative distinctions in the immigration area need not be so carefully tuned to alternative considerations as legislation relative to citizens. 430 U.S. at 799, n. 8, 97 S.Ct. 1473. *Fiallo* is distinguishable from the instant case in that the plaintiffs there were aliens and clearly non-citizens.

Neither is *Rogers v. Bellei*, 401 U.S. 815, 91 S.Ct. 1060, 28 L.Ed.2d 499 (1971), controlling. There the Supreme Court denied the claim to citizenship of a plaintiff who had been born abroad of an American mother and a noncitizen father but had failed to meet subsequent residency requirements under the Immigration and Nationality Act of 1952. Denying plaintiff's constitutional challenge to the defeasance of citizenship upon failure of conditions subsequent, the Supreme Court held that since the plaintiff was born abroad, was never naturalized, and had not been subject to the jurisdiction of the United States, he could not claim the protections of the Fourteenth Amendment. 401 U.S. at 507, 91 S.Ct. 1060. However, that case did not involve the statutory scheme in issue here or an equal protection claim based on a classification of legitimacy. As a factual distinction, the plaintiff there had not complied with the statutory residency requirements whereas Y.T. has complied and has been subject to the jurisdiction of the United States for the last fifteen years.

Extending the holdings of *Fiallo* and *Bellei* beyond their particular facts might impinge upon other holdings of the Supreme Court to the effect that citizenship derived by naturalization is not inferior to that derived by native birth, *Schneider v. Rusk*, 377 U.S. 163, 165, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964), and that citizenship, once granted, is presumably retained unless voluntarily relinquished, *Afroyim v. Rusk*, 387 U.S. 253, 262, 87 S.Ct. 1660, 18 L.Ed.2d 757 (1967). The difficult question for purposes of Fourteenth Amendment analysis is exactly what kind of citizenship § 201 grants—is it conditional from inception, thus placing the conditional "citizen" outside the protections of the Fourteenth

Amendment, or is it vested subject to defeasance, thus arguably placing the statutory citizen on an equal footing with the native born? This is an open question [3], one better left for another day. However, were the plaintiff here to qualify for Fourteenth Amendment citizenship, she might well succeed in overcoming the § 205 requirement of legitimization. *See Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 175, 92 S.Ct. 1400, 1407, 31 L.Ed.2d 768 (1972) ("no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as unjust—way of deterring the parent"); *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1967) (state law denying wrongful death recovery by illegitimates was unconstitutional as denying a right to a child "when no action, conduct, or demeanor of [the child was] possibly relevant to the harm that was done"); *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1976) ("illegitimate children can affect neither their parents' conduct nor their own status"). Here, Y.T. has done all she could reasonably be expected to do to keep her American citizenship; we have held that her actions were sufficient to entitle her to a certificate of citizenship under § 201(i). Were we to find § 205 also applicable, we would place upon her a penalty for the failure of her parent.

### Conclusion

Having met the express conditions of § 201(i), Y.T. is entitled to a certificate of American citizenship. We believe this result is dictated by the plain language of the statute. Moreover, this reading produces a result consistent with current equal protection analysis.

An appropriate order will be entered.

---

**3.** *See* the discussion in L. Tribe, American Constitutional Law 277–83 (1973).